

FILED

MAR 25 2009

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

           Respondent,

v.

                                      2:02CR217
                                      2:07CV463

KARL E. MOORE, SR.,

           Movant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by order of reference entered December 15, 2008. (Doc. #275).[1] The Court has original jurisdiction in this action pursuant to 28 U.S.C. § 1331.

On October 5, 2007, Karl E. Moore, Sr., a federal prisoner proceeding pro se, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. #183). On December 31, 2007, Moore filed a memorandum in support of his motion. (Doc. #225).[2] Moore submitted numerous attachments with his memorandum, including his own affidavit. Id. at Attach. #16. The United States responded on

---

[1] Docket entries are to the criminal action, unless otherwise noted.

[2] Also on December 31, 2007, Moore filed a "motion for permission to file over-sized memorandum." (Doc. #223). On January 25, 2008, Moore filed a "motion for leave to amend filed § 2255 memorandum to comply with local court rules." (Doc. #223). The District Court has yet to rule on either motion.

November 8, 2007 (Doc. #196), and on January 10, 2008 (Doc. #219).[3]

In his motion and supporting memorandum, Moore asserts several grounds for relief. By order filed August 7, 2008, the District Court directed that an evidentiary hearing be conducted on Moore's ineffective assistance of counsel claims. (Doc. #271). Charles D. Lewis, an attorney from Richmond, was appointed to represent Moore. (Doc. #272). The matter was referred for a hearing and Report and Recommendation recommending disposition of Moore's ineffective assistance of counsel claims following the hearing. An evidentiary hearing was conducted and concluded on December 16, 2008. The transcript of the hearing was filed in January. Following lengthy deliberation, the Court recommends that the District Court adopt the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

1.  On December 9, 2002, Moore was named as a defendant in a forty-six count federal indictment returned by the grand jury.

2.  Michelle J. Atkins was appointed to represent Moore and appeared on his behalf at a detention hearing on December 17, 2002. Subsequent thereto, Atkins moved to withdraw as counsel. Her involvement was minimal, and Atkins' motion was granted on December 30, 2002. (Doc. #10).

---

[3]In the first response, the United States contends that Moore's motion was untimely filed; however, this contention fails in that Moore avers that he placed his motion into the hands of the prison authorities on October 1, 2007 and it is, therefore, deemed filed on that date. See Houston v. Lack, 487 U.S. 266, 276 (1988) (stating that motions filed by pro se prisoners are generally deemed filed "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk"). The second response addresses the merits of Moore's claims. Also, on February 20, 2008, in response to Moore's affidavit, the United States filed the affidavits of Moore's trial, sentencing, and appellate counsel. (Doc. #237).

3.   On January 8, 2002, Charles R. Burke was appointed to represent
     Moore.

4.   The District Court subsequently received a letter from Moore
     complaining about Burke. (Doc. #13). The District Court construed
     the letter as a motion for new counsel, and forwarded it to Burke.
     Id.

5.   In response, on January 17, 2003, Burke filed a motion to withdraw
     as counsel. (Doc. #14). In the motion, Burke states that Moore was
     combative and refused to cooperate with Burke.  Id. at ¶ 19.

6.   On January 30, 2003, the District Court granted Burke's motion,
     (Doc. #15), and, on February 6, 2003, appointed David W. Bouchard
     to represent Moore, (Doc. #16). Bouchard was the third appointed
     counsel in fifty-six days.

7.   On February 6, 2003, a superseding indictment was handed down.

8.   On March 19, 2003, Moore was arraigned on the charges contained in
     the superseding indictment.

9.   Bouchard filed numerous pretrial motions.  (Doc. #'s 21-35).

10.  Bouchard believed that, after consulting with the Assistant United
     States Attorney ("AUSA"), and given the records seized from Moore's
     home and the number of co-conspirators that would be testifying
     against Moore at trial (including his wife and son), Moore could not
     prevail if the case went to trial. (Bouchard Aff. at 1 and 2; Tr.
     at 36:18-22).

11.  Bouchard encouraged Moore to plead guilty. (Moore Aff. at ¶ 4; Tr.
     at 39:4-11).

12.  Following the arraignment, Bouchard arranged a meeting between the
     AUSA, himself, and Moore.  The meeting, which was not pre-cleared

3

with Moore, lasted for one to two hours, during which time the AUSA outlined the case against Moore. Moore "took over the conversation and tried to negotiate his own agreement with the Government," (Bouchard Aff. at 2), while giving little cooperation to Bouchard.

13. Moore objected to the terms of the plea agreement discussed at the meeting.

14. After the meeting, communication broke down between Moore and Bouchard. Moore refused to cooperate with Bouchard, accusing him of being an agent of the government. Moore requested that Bouchard withdraw as counsel. (Bouchard Aff. at 2).

15. On June 24, 2003, only days before trial, Bouchard filed a motion to withdraw as counsel so that Moore could represent himself. (Doc. #63). On June 30, 2003, a hearing was conducted and the motion was denied.

16. At the June 30, 2003, hearing, and after the motion to withdraw as counsel was denied, Bouchard moved to have a psychiatric evaluation of Moore. Bouchard requested the evaluation because he felt that Moore was not "rationally dealing with the reality he was facing." (Bouchard Aff. at 2).

17. The District Court granted the motion and Moore was examined and determined to be competent.

18. On July 3, 2003, Moore's trial commenced. During trial, Moore's son, Karl E. Moore, Jr., testified against him. During his testimony, Moore conveyed to Bouchard his belief that his son perjured himself because he was testifying about events that occurred during the time when he was incarcerated. (Moore Aff. at ¶ 11).

19.   Moore wanted to recall his son for the purpose of impeachment; however, Bouchard entered into a stipulation with the United States regarding the dates Moore's son was incarcerated, thereby negating the need for the son to be recalled. (Moore Aff. at ¶ 12; Bouchard Aff. at 2).

20.   On July 16, 2003, counts fifteen, thirty-five through thirty-eight, forty-one, forty-two, forty-six, forty-seven, and fifty-one through fifty-three were dismissed on motion by the United States. (Presentence Investigation Report ("PSI") at 6). On July 18, 2003, a jury found Moore guilty of the remaining counts. <u>Id.</u>

21.   Pursuant to the District Court's order, the Probation Office prepared a PSI, which determined Moore's base offense level to be 48, with a criminal history category of III. <u>Id.</u> at 71.

22.   On October 6, 2003, Bouchard filed objections to the PSI, including an <u>Apprendi</u>[4] objection. (Doc. #83). He argued that the kind and quantity of drugs attributed to Moore in the PSI were based on evidence not presented to the jury. <u>Id.</u>

23.   On October 10, 2003, Bouchard filed a motion to withdraw as counsel. Moore's utter lack of cooperation and adversarial attitude prevented Bouchard from being able to represent his client. (Doc. #85). In his motion, Bouchard stated that, during a conference with Moore to review the PSI, Moore objected to Bouchard's handling of the case. Specifically, Moore accused Bouchard of failing to file motions, provide him with a defense, violating attorney client privilege for

[4]"In <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Id.</u> at 490.

5

allegedly disclosing information to the United States, and for being an informant. Moore further threatened to file a civil action against Bouchard, as well as a petition for a writ of habeas corpus. According to Bouchard, Moore told him to "get ready[,] that he was coming after me." (Doc. #85 at ¶ 2). Finally, Moore insisted that Bouchard object to the entire PSI (which he did) and that he subpoena certain witness, contrary to Bouchard's advice.

24. Bouchard filed a motion to continue Moore's sentencing, in part due to Moore's insistence that certain co-defendants be present. (Doc. #87).

25. The District Court granted Bouchard's motion to withdraw. (Doc. #88). In its order, the District Court noted that Moore had filed ethics violations against Bouchard with the American Bar Association, and that the District Court itself had witnessed defendant threaten Bouchard. The District Court further noted:

> During the hearing on counsel's motion to withdraw, Defendant launched [into] a diatribe on how counsel failed in his duties to adequately represent Defendant before, during, and after trial. The Court reminded Defendant that counsel is the one with the law degree, and that counsel has an obligation to never put forth frivolous arguments. The Defendant became extremely belligerent with the Court, requiring the Court to have Marshals "escort" Defendant back to his seat. While being escorted, Defendant continued to shout that the Court was part of a conspiracy to "cover up [an] informant." The Court finds that Defendant's tirade is only an example of how he, and not counsel, is the cause of the problems which prompted the filing of this motion. Regardless, the obstinate and volatile behavior of Defendant towards Defense Counsel weighs in favor of withdrawal.

Id. at 3 (internal citations omitted).

26. The District Court appointed Michael T. Fasanaro, Jr. to represent Moore. Id.

27. Fasanaro subsequently filed a motion to continue Moore's sentencing

6

and a motion to prepare transcripts so that he could familiarize himself with the case and properly prepare for the sentencing. (Doc. #'s 91-92). The District Court granted the motion to continue. (Doc. #95). Fasanaro subsequently filed a second motion to continue and for transcripts. (Doc. #104). The motions were denied. (Fasanaro Aff. at 1).

28. At the December, 2008, hearing, Moore's counsel questioned Fasanaro regarding his reasons for moving for a continuance. Counsel suggested that Fasanaro should have moved for a continuance due to the fact that Blakely v. Washington[5] was, at that time, pending before the Supreme Court. (Tr. at 20).

29. Fasanaro did not file any additional objections to the PSI, but argued the objections previously raised by Bouchard. (Tr. at 22-24). At the hearing, Fasanaro could not recall whether he argued any objections based on Apprendi.[6]

30. At the hearing, Fasanaro testified that he was "handicapped" by the fact that he did not have a complete copy of the trial transcript. Moore was in possession of portions of the transcript, but refused

---

[5]In June 2004, the Supreme Court decided Blakely v. Washington, 542 U.S. 296 (2004), which involved the constitutionality of the State of Washington's determinate sentencing scheme. The Supreme Court held that the trial court's sentencing of the state defendant violated his Sixth Amendment right to a jury trial. Specifically, the Court held that Apprendi and other precedents preclude a judge from utilizing a fact found by him using a preponderance of the evidence standard in order to impose more than the maximum sentence that could be imposed based solely on the facts reflected in the jury verdict or admitted by the defendant. Id. at 303-04.

[6]Although the Apprendi objection was raised in Bouchard's written objections, it was apparently not raised or argued at sentencing. In its opinion, the Fourth Circuit found that Moore did not raise this issue in the District Court and applied the plain error standard of review. United States v. Smith, et al., 441 F.3d 254, 271 (4th Cir. 2006).

to allow Fasanaro to borrow them to make copies, even though Fasanaro emphasized his critical need for the record and promised to return the transcript as quickly as possible. (Tr. at 24:17-25 and 25:1-2).

31.  At sentencing, the District Court found Moore responsible for 1,053,269 kilograms of marijuana, for a base offense level of 38, and assessed an additional ten offense levels, finding that Moore had a leadership role in the conspiracy, used a minor in the commission of the crime, possessed a firearm in connection with the offense, and engaged in money laundering under 18 U.S.C. § 1956. Moore's total offense level of 48, when combined with his criminal history category of III, yielded a guideline range of life imprisonment.  United States v. Smith, et al., 441 F.3d 254, 271 (4th Cir. 2006).

32.  Moore was sentenced to 480 months imprisonment and life imprisonment, to be served concurrently with five years supervised release and $1600 in special assessments.  Judgment was entered February 5, 2004. (Doc. #107). An order of forfeiture was entered February 2, 2004.  (Doc. #106).

33.  Moore's sentence exceeds the maximum sentence authorized by the facts found by the jury.  Smith, 441 F.3d at 271.[7]

34.  Fasanaro filed a timely notice of appeal on February 9, 2004, (Doc. #110), and, on February 13, 2004, Fasanaro was appointed to represent Moore on appeal, (Doc. #113).

---

[7]As summarized by the Fourth Circuit, the special verdict returned by the jury-which included specific findings regarding drug quantity as to some counts-authorized a guideline range of 292-365 months.  Id.

35. On February 19, 2004, Fasanaro was relieved as counsel, and Craig Sampson was appointed to represent Moore on appeal. Sampson was the fifth attorney appointed to represent Moore.

36. On August 12, 2004, Kevin Schad was substituted as counsel on appeal. (Doc. #146).

37. After the initial briefing and oral argument, Schad filed a supplemental brief, pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, asserting that Moore was entitled to resentencing pursuant to <u>United States v. Booker</u>, 543 U.S. 220 (2005).[8] (Schad Aff. at ¶ 3).

38. "In that brief [Schad] contended that the issue was to be reviewed under a plain error standard of review. The standard chosen was based upon a review of the sentencing hearing transcript, in which counsel raises no <u>Apprendi</u> or <u>Blakely</u> claim to the District Court." <u>Id.</u>

39. Following his appeal, Moore conveyed to Schad his belief that Schad should have argued that the <u>Apprendi</u> objection regarding drug quantities had not been waived since Bouchard had raised the issue in his written objections. (Schad Aff. at ¶ 5). This argument, if successful, would have required that the issue be reviewed under a <u>de novo</u> standard of review. (Tr. at 8).

40. At the hearing, Schad testified that, "in hindsight," he believes that he could have made a case for the Fourth Circuit to use the <u>de novo</u> standard of review but, at the time of the appeal, he believed

---

[8]In January 2005, the Supreme Court held that the principles in <u>Blakely</u> applied to the federal sentencing guidelines as well. <u>United States v. Booker</u>, 543 U.S. 220 (2005).

that the plain error standard of review was the appropriate one given what transpired at sentencing. (Tr. at 16).

41. Schad testified to his belief that, had Fasanaro argued the <u>Apprendi</u> objection at sentencing, thereby preserving the issue, "not only would it have changed the standard, but I think it would have changed the outcome of the appeal." (Tr. at 9: 20-21).

42. Schad testified that he raised all meritorious issues in the appeal. (Tr. at 15:15-19).

43. In addition to the briefs filed by Schad, Moore filed several documents <u>pro se</u>. <u>Smith</u>, 441 F.3d at 260 n.1.

44. On March 21, 2006, the Court of Appeals for the Fourth Circuit affirmed Moore's conviction and sentence. <u>Id.</u> at 274.

45. Regarding Moore's sentence, the Fourth Circuit applied the plain error standard of review and found that Moore had established a <u>Booker</u> violation. <u>Id.</u> at 271. However, the Fourth Circuit declined to notice the plain error established by Moore, stating:

> Even though the Sixth Amendment required that the jury, rather than the trial judge, make the drug quantity findings that increased Moore's sentence, the evidence concerning drug quantity was overwhelming and uncontroverted, even at sentencing. And, while Moore challenged his guilt of the charged offenses, he did not maintain any challenge to the evidence concerning the quantity of the drugs involved in the transactions to which various witnesses testified. There can be no question that the jury, having found that the offenses were committed, would have also determined that the offenses involved the specific amounts charged in the indictment.

<u>Id.</u> at 272-73.

46. On October 2, 2006, the Supreme Court denied Moore's petition for writ of certiorari, thereby finalizing Moore's conviction and sentence. <u>Moore v. United States</u>, 549 U.S. 931 (2006).

## II.  CONCLUSIONS OF LAW

1.  There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues; (2) challenges to the District Court's jurisdiction to impose the sentence; (3) challenges to the length of a sentence in excess of the statutory maximum; and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255.[9]

2.  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).

3.  The movant bears the burden of proving his grounds for collateral attack by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam).

4.  In his pro se motion, Moore alleges that he was denied effective assistance of counsel at every stage of his criminal proceeding-at trial, at sentencing, and on appeal.  In total, Moore asserts

---

[9]Title 28 U.S.C. § 2255 provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

nineteen instances where counsel was allegedly ineffective.[10]

5.    To prevail on a claim of ineffective assistance of counsel, the
movant bears the burden of showing: (1) counsel's performance was
deficient; and (2) the deficient performance prejudiced the defense.
Strickland v. Washington, 466 U.S. 668, 687 (1984).  "To prevail,
a petitioner must demonstrate that counsel's performance fell below
an objective standard of reasonableness, and that such deficient
performance was prejudicial."  U.S. v. Willis, 273 F.3d 592, 598
(5th Cir. 2001) (citing Strickland, 466 U.S. at 687).   If the
petitioner makes an insufficient showing on one component of the
Strickland analysis, it is not necessary for the court to address
both components.  Strickland, 466 U.S. at 697.

6.    The reviewing court must give strong deference to counsel's
decisions.  Strickland, 466 U.S. at 690 ("[C]ounsel is strongly
presumed to have rendered adequate assistance and made all
significant decisions in the exercise of reasonable professional
judgment.").

7.    "A fair assessment of attorney performance requires that every
effort be made to eliminate the distorting effects of hindsight, to
reconstruct the circumstances of counsel's challenged conduct, and
to evaluate the conduct from counsel's perspective at the time."
Id. at 689.

8.    Prejudice must be affirmatively proved.  Id. at 693.  "The defendant
must show that there is a reasonable probability that, but for

---

[10]At the hearing, Moore's counsel indicated that he would only address some
of the issues raised by Moore in his motion.  Accordingly, the Court will only
address those grounds raised by counsel at the hearing.

counsel's unprofessional errors, the result of the proceeding would
have been different." <u>Id.</u> at 694.

9.   "A reasonable probability is a probability sufficient to undermine
confidence in the outcome." <u>Spencer v. Murray</u>, 18 F.3d 229, 233
(4th Cir. 1994).

10.  At the outset, the Court notes that, over the course of this case,
Moore has been appointed numerous attorneys, each of whom Moore has
been unwilling to work with. The record is replete with instances
where Moore has thwarted his counsel's efforts to assist him, and
has been combative, uncooperative, hostile, and belligerent. Moore
has also exhibited bizarre behaviors such as filing complaints,
making physical threats, and accusing one of his counsel of being
a government agent. At every turn, Moore handicapped the persons
appointed to represent him. Bouchard made clear in his testimony
that Moore would not deal with, or help him deal with, very
difficult facts. Fasanaro, coming in late, could not even get from
Moore portions of the record needed to prepare for sentencing. The
degree of disruption and uncooperativeness experienced by counsel
can be summed up by Moore's behavior during the December, 2008,
hearing. In the middle of the hearing, Moore asked that Lewis, an
excellent counsel, be relieved. Moore wanted to represent himself.
Moore does not have a high level of formal education, but his
behavior from initial appearance through appeal reveals a
calculating and manipulative 'street-smart' criminal.

11.  Regarding Bouchard, much of the focus of counsel's questions at the
hearing was the fact that Bouchard believed that Moore would not be
able to prevail if the case were to go to trial and, therefore,

encouraged Moore to enter into a guilty plea.

12. As stated above, counsel is presumed to have rendered adequate assistance. "The fact that . . . counsel encouraged his client to plead guilty, based upon the evidence gathered and presented, is not in itself ineffective assistance, but a trial strategy decision which is entitled to deference." Almon v. United States, 302 F. Supp. 2d 575, 586 (D.S.C. 2004).

13. The evidence before the Court demonstrates that, after reviewing the evidence against Moore, Bouchard determined that it was not in his client's best interests to go to trial. At the hearing, Moore failed to overcome the presumption of reasonableness accorded to Bouchard's performance in this respect. See id. ("Here, the Petitioner ignored his counsel's advice to plead guilty, and instead proceeded to trial. He cannot demonstrate that advice he ignored was in itself ineffective or prejudiced him in any way.").

14. Moore's additional complaints against Bouchard essentially amount to his assertion that the breakdown in their relationship affected Bouchard's representation of Moore. Moore essentially accuses Bouchard of half-hearted representation due to his belief that the case was unwinnable. The record reveals otherwise.

15. First, the Court notes that many of the difficulties Bouchard experienced in his representation of Moore were caused by Moore. The evidence shows that Moore was combative, accusatory and refused to listen to Bouchard. Moore additionally accused Bouchard of being a government agent, lodged formal complaints against him, and made physical threats. It is simply disingenuous of Moore to assert an ineffective assistance claim when he was the cause of the breakdown

14

in communication.

16.    Second, a review of the record shows that Bouchard, who is an
       experienced defense attorney, mounted a defense despite overwhelming
       evidence of Moore's guilt.  Regarding Moore's challenge to certain
       tactical decisions, namely Bouchard's decision not to file certain
       motions, Moore's argument fails.

17.    Regarding Fasanaro's representation of Moore, it was evident at the
       hearing that Moore's primary allegation is that Fasanaro was
       deficient in not raising the Apprendi/Blakely objection at
       sentencing.[11]

18.    Moore has shown, through Schad's testimony, a reasonable probability
       that, if Fasanaro had not forfeited the objection, the Fourth
       Circuit would have reviewed the issue under a lesser standard of
       review, and would likely have remanded the case for resentencing.

19.    However, even assuming prejudice, Moore's claim is infirm because
       he cannot show deficient performance.  As stated above, Moore was
       sentenced prior to the Blakely and Booker decisions.   Clearly,
       Fasanaro was not deficient for failing to predict the Blakely and
       Booker decisions and raise an argument based on them.  See, e.g.,
       Fuller v. United States, 398 F.3d 644, 650 n.4 (7th Cir. 2005) (an
       argument that counsel was ineffective for failing to anticipate
       Blakely and Booker would not be "tenable"); United States v.
       Burgess, 142 Fed. Appx. 232 (6th Cir. June 22, 2005) (counsel's
       failure to anticipate the Blakely and Booker decisions did not fall
       below an objective standard of reasonableness and was not

_____

[11]See supra note 6.

15

deficient);  <u>United States v. Campbell</u>, 2004 WL 1888604 (1st Cir. Aug. 24, 2004) (failure to anticipate <u>Blakely</u> would not constitute unreasonable performance under <u>Strickland</u>, particularly in light of well-established law in circuit that was to the contrary); <u>see also</u> <u>United States v. Williams</u>, 374 F. Supp. 2d 173, 176-77 (D.D.C. 2005) (collecting authority holding failure to predict holdings of <u>Blakely</u> and <u>Booker</u> did not constitute deficient performance by counsel).

20.   Regarding Schad, it cannot be said that his performance fell below an objective standard of reasonableness.  He testified that he raised all meritorious issues on appeal.  As stated above, in assessing counsel's performance, the reviewing court must evaluate the conduct from counsel's perspective at the time.  Clearly, Moore has failed to demonstrate any deficiency on Schad's part.

21.   The problems with counsel, in every instance, were of the movant's making.  Moore cannot point to a single instance of ineffective assistance of counsel.  In spite of his behavior, he received exceptional representation.  He is entitled to nothing more.

### III.   RECOMMENDATION

For the foregoing reasons, it is recommended that the District Court adopt the foregoing findings of fact and conclusions of law, and deny Moore's ineffective assistance claims.

### IV.   REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.   Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations

within ten days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(d) of said rules.

2.   A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. See Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

James E. Bradberry
United States Magistrate Judge

**Norfolk, Virginia**
**March 25, 2009**

<u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report was mailed this date to each of

the following:

        Laura M. Everhart, Esq.
        United States Attorney's Office
        101 W. Main St.
        Suite 8000
        Norfolk, VA 23510

        Charles D. Lewis
        Hicks Tymas LLC
        830 E. Main St.
        Suite 1800
        Richmond, VA 23219

Fernando Galindo, Clerk

By _____

        Deputy Clerk

_____March 25_____, 2009

18